UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:20-cv-03088-JPH-MG |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security[2], | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Barbara A. seeks judicial review of the Social Security Administration's decision denying her petition for disability insurance benefits and Supplemental Security Income. She argues that the Administrative Law Judge ("ALJ") erred when she: (1) did not properly address Plaintiff's subjective symptoms; (2) did not adequately explain the rationale for her Residual Functional Capacity finding; and (3) failed to understand the nature of Plaintiff's past relevant work before determining that Plaintiff could perform past relevant work. *See* dkt. 12. For the reasons that follow, the ALJ's decision is **AFFIRMED**.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Under Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

1

# I.
# Facts and Background

In 2017, Plaintiff applied for Disabled Widow Benefits, alleging a disability onset date of January 1, 2012. Dkt. 9-2 at 16. Her claim was denied initially in January 2018 and on reconsideration in May 2018. *Id.* She then had a hearing in January 2020 before ALJ Shelette Veal, who denied Plaintiff's claims in February 2020. *Id.* at 16, 28. The SSA's Appeals Council denied Plaintiff's request for review. *Id.* at 2–3.

In reaching her conclusion that Plaintiff was not disabled, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4). *Id.* at 16–27. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[3] since the alleged onset date of January 1, 2012. *Id.* at 18.

- At Step Two, Plaintiff had "the following severe impairments: chronic obstructive pulmonary disease (COPD), peripheral neuropathy, mild degenerative joint disease of the acromioclavicular joint, mild osteoarthritis of the shoulder and knee, uncontrolled diabetes, asthma, lumbar extrusion with mild stenosis and left foraminal compromise, and obesity." *Id.*

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). *Id.* at 20.

- After Step Three, but before Step Four, Plaintiff had the residual functional capacity ("RFC") "to perform light work . . . except she can occasionally lift twenty pounds and frequently lift or carry ten pounds. She can stand or walk for about six hours and sit for six hours per eight-hour workday. She can occasionally climb ramps or stairs; never climb

---

[3] Substantial gainful activity is defined as work activity that is both "substantial" ("involves doing significant physical or mental activities") and "gainful" ("usually done for pay or profit, whether or not a profit is realized"). 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).

2

    ladders, ropes, or scaffolds; occasionally balance on level surfaces; and occasionally stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to humidity, fumes, odors, dust, gases, moving mechanical parts, and unprotected heights.  She can frequently perform handling, fingering, and feeling bilaterally." *Id.* at 22.

- At Step Four, Plaintiff "is capable of performing past relevant work as a telemarketer." *Id.* at 27.

On November 30, 2020, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g).  Dkt. 1.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).  After step three, but

3

before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(e), (g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate.  *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

### III.
### Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) did not properly apply SSR 16-3p in assessing Plaintiff's asthma-related and other symptoms, (2) did not adequately explain the rationale behind the ALJ's finding of the RFC, and (3) did not properly address the details of Plaintiff's past relevant work.  Dkt. 12 at 15–24.  The Commissioner responds that the ALJ: (1) thoroughly evaluated Plaintiff's activities and asthma-related symptoms, (2) provided a logical bridge between the evidence and the ALJ's RFC conclusion, and (3) reasonably relied on a vocational expert to address Plaintiff's past relevant work.  Dkt. 13 at 6–10.

### A. Subjective Symptom Analysis

Plaintiff argues that the ALJ erred in addressing Plaintiff's subjective symptoms under SSR 16-3p by ignoring some serious symptoms and failing to build a logical bridge from the evidence to her conclusions. Dkt. 12 at 15–20. The Commissioner responds that the ALJ considered Plaintiff's complaints and supported her conclusions about them with substantial evidence. Dkt. 13 at 5–8.

SSR 16-3p instructs the ALJ to apply a two-prong test to weigh claimant's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 CFR § 416.929. Second, if such an impairment is found, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* If there is a conflict between the plaintiff's description and the objective medical evidence presented, the ALJ must consider "other relevant evidence in the individual's case record" to resolve the conflict. SSR 16-3p, at *4; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

An ALJ's subjective symptom evaluation is entitled to special deference and will be reversed only if "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). The ALJ "must consider several factors, including the claimant's daily

activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)).

Here, the ALJ began by reciting SSR 16-3's two-step process. Dkt. 9-2 at 22. For the first step, she found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* So she then considered Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms." *Id.* at 22–25 (citing 20 CFR § 404.1529(c)(3)).

In that analysis, the ALJ recognized Plaintiff's back, shoulder, and knee pain; muscle spasms in her legs and feet; and complaints about carpal tunnel syndrome. *Id.* at 23–25. The ALJ also recognized Plaintiff's reports of chest tightness, shortness of breath, wheezing, asthma and asthma attacks, and COPD. *Id.* at 24. Finally, the ALJ considered Plaintiff's continued complaints of "frequent urination, fatigue, and pain and numbness in her feet." *Id.* at 25. However, the ALJ compared those subjective symptoms with medical evidence from the times of the complaints and concluded that Plaintiff's reported symptoms "are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22, 26.

The ALJ also acknowledged that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," so she considered Plaintiff's daily activities. *Id.* at 25. The ALJ found that Plaintiff "cooks, cleans, and shops for

6

herself, has no problems with personal care, and is able to function independently and take care of her own basic needs." *Id.* at 25. The ALJ also noted that "prior to August 2017, she was the main caretaker for her husband who had many chronic illnesses including blindness and severe diabetes." *Id.* at 25. Based on this evidence, the ALJ concluded that Plaintiff's "daily activities are not as limited as one would expect given" her subjective symptoms. *Id.* at 25–26.

In challenging this analysis, Plaintiff first argues that the ALJ's findings about her daily activities are unsupported by record citations. Dkt. 12 at 17–18. But the ALJ referred back to an earlier portion of her decision where she relied on Plaintiff's statements about her daily activities. Dkt. 9-2 at 25 ("Again, the claimant cooks, cleans, and shops for herself, has no problems with personal care, and is able to function independently and take care of her own basic needs."); *cf. Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (ALJs' decisions may be considered "in light of elaboration and analysis appearing elsewhere in the decision"). Moreover, while Plaintiff emphasizes some difficulties she faces in her daily activities, she does not dispute that she can do some cooking, cleaning, shopping, and personal care, as the ALJ found. Dkt. 12 at 17–18. The ALJ's factual conclusions about Plaintiff's daily activities—activities that the ALJ recognized were "fairly limited," dkt. 9-2 at 25—are therefore not "patently wrong." *Burmester*, 920 F.3d at 510; *see Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("[T]he ALJ's failure to

7

mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").

The ALJ also did not inappropriately equate Plaintiff's daily activities to an ability to work, as Plaintiff argues. *See* dkt. 12 at 17–19. Rather, the ALJ specified that she looked to Plaintiff's daily activities as only one piece of the evaluation of Plaintiff's "complaints of disabling symptoms and limitations." Dkt. 9-2 at 25–26. And the ALJ's conclusion about Plaintiff's daily activities was a modest one—that they "are not as limited as one would expect." *Id.* The ALJ therefore did not conclude that Plaintiff was able to work simply because of her daily activities. *See Deborah M.*, 994 F.3d at 791 ("[T]he ALJ correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not. She did not equate Plaintiff's activities to full-time work.").

Indeed, the ALJ extensively considered the relevant medical evidence in the record both before and after considering Plaintiff's daily activities. Dkt. 9-2 at 22–26. The ALJ discussed x-rays and an MRI in considering the effects of back, knee, and shoulder pain. Dkt. 9-2 at 26. The ALJ also evaluated the Plaintiff's consultative exams and pulmonary function tests. *Id.* at 23–24, 26. And the ALJ evaluated medications, treatments, and other test results— including cardiology workups and A1C numbers. *Id.* at 26. The ALJ therefore evaluated the medical evidence in the record—both favorable and unfavorable

8

to Plaintiff's claim—and explained why it was "not entirely consistent" with Plaintiff's subjective symptoms. *Id.* at 22–26.

That includes Plaintiff's asthma-related symptoms, which she argues the ALJ did not meaningfully address. Dkt. 12 at 19. The ALJ considered Plaintiff's doctor's opinion that she could not go back to her call-center job while her asthma symptoms remained "uncontrolled," but also noted Plaintiff's "unremarkable" physical exam, "normal spirometry" on her pulmonary function test, "significant bronchodilator response," and "symptoms [that] were typical for asthma." Dkt. 9-2 at 23–24. Finally, the ALJ articulated that she gave some opinions, such as those of the State agency medical consultants, more weight than others based on consistency with the medical exams and records. That includes giving Plaintiff's pulmonologist less weight because of an opinion from Plaintiff's doctor a few months later that she had mild asthma and a normal respiratory exam. *Id.* at 26–27 (citing dkt. 9-14 at 267–72).

In short, the ALJ's conclusions about Plaintiff's subjective symptoms "contain specific reasons for the weight given to the individual's symptoms, [are] consistent with and supported by the evidence, and [are] clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Because the ALJ gave specific reasons supported by the record, and the evidence does not show that her decision was "patently wrong," it will not be disturbed on this basis. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Burmester*, 920 F.3d at 510.

## B. RFC Analysis

The RFC "is the most [the Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Here, the ALJ found that Plaintiff had the RFC to perform light work with some limitations:

> [T]he claimant has the residual functional capacity to perform light work . . . except she can occasionally lift twenty pounds and frequently lift or carry ten pounds. She can stand or walk for about six hours and sit for six hours per eight-hour workday. She can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance on level surfaces; and occasionally stoop, kneel crouch, and crawl. She should avoid concentrated exposure to humidity, fumes, odors, dust, gases, moving mechanical parts, and unprotected heights. She can frequently perform handling, fingering, and feeling bilaterally.

Dkt. 9-2 at 22. In the RFC analysis, the ALJ "must include all of a claimant's limitations supported by the medical record." *Deborah M.*, 994 F.3d at 791. The ALJ is not required to "specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Plaintiff contends that the ALJ did not adequately explain the rationale behind her RFC finding because the ALJ (1) did not complete a required function-by-function assessment, (2) asked a hypothetical that did not adequately capture Plaintiff's limitations, and (3) failed to consider enough evidence to create a logical bridge to the conclusion. Dkt. 12 at 21–22. The Commissioner responds that substantial evidence supports the ALJ's RFC assessment. Dkt. 13 at 9.

10

As explained above, the ALJ considered Plaintiff's medical conditions and symptoms under both her own descriptions of them and the medical evidence in the record. *See* dkt. 9-2 at 22–27. The ALJ also considered statements from Plaintiff's treating and examining physicians and evaluated their credibility based on their consistency with the medical evidence. *Id.* at 26–27. In short, the ALJ built a logical bridge between the evidence and conclusions, that can be readily traced in the decision. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Plaintiff does not identify fatal gaps in that logical bridge. She argues that the ALJ did not explicitly conduct a "function-by-function assessment," dkt. 12 at 21, presumably referring to the "seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling," *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). But the Court's "role is to determine whether the ALJ applies the right standards and produced a decision supported by substantial evidence." *Jeske*, 955 F.3d at 596. So if "the ALJ's discussion shows that the ALJ considered all strength-demand functional limitations in arriving a conclusion supported by substantial evidence," there is no reason to remand. *Id.* That is the case here because the ALJ discussed Plaintiff's "severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility." *Curvin*, 778 F.3d at 651. Indeed, Plaintiff has not identified any findings or conclusions that the ALJ failed to support with medical evidence. *See* dkt. 12 at 21–23.

For example, Plaintiff argues that her asthma is poorly controlled and relies on her doctor's opinion that she could not return to her previous job with uncontrolled asthma. *Id.* at 22. But the ALJ acknowledged that evidence and reached a different conclusion after explaining that Plaintiff's relevant test results were normal or showed only mild impairment. Dkt. 9-2 at 24, 26. The ALJ also explained that she was unpersuaded by the pulmonologist's opinion that Plaintiff's uncontrolled asthma prevented her from returning to the call center because Plaintiff's doctor noted "just a few months later" that "she had only mild asthma and a normal respiratory exam." *Id.* at 27 (citing dkt. 9-14 at 267–72). "Essentially, [Plaintiff] argues that the ALJ should have weighed the evidence differently and imposed an additional limitation on her RFC." *Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022). But the ALJ was not required to do so, *see id.*, and Plaintiff has not shown that the ALJ's conclusion is "patently wrong." *Jones*, 623 F.3d at 1162 (Plaintiffs "must do more than point to a different conclusion that the ALJ could have reached.").

Finally, Plaintiff argues that the ALJ did not ask a hypothetical that captures her functional limitations. Dkt. 12 at 21. While this argument is undeveloped, it appears to refer to the ALJ's hypothetical posed to the vocational examiner, asking whether an individual with certain functional restrictions could perform past work as a telemarketer. *See id.* at 12. That hypothetical, however, followed the ALJ's conclusions about Plaintiff's RFC, which were in turn supported by medical evidence. Dkt. 9-2 at 59–60; *see Burmester*, 920 F.3d at 511. Moreover, Plaintiff does not specify any additional

limitations that should have been included in a hypothetical. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021).

The ALJ therefore did not commit error in the RFC finding that would require remand. *See Jeske*, 955 F.3d at 596.

### C. Step Four Finding

At step four of the sequential evaluation process, an ALJ must consider the RFC assessment and the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work either as generally performed or as she actually performed it, then the claimant is not disabled. *Id.*; *see* SSR 82-62; 20 C.F.R. § 404.1560(b). The ALJ may use the services of vocational experts to determine a claimant's ability to perform past relevant work. *See* 20 C.F.R. § 404.1560(b).

Plaintiff argues that the ALJ erred by failing to include "any particularized analysis of [Plaintiff's] previous job," including its "exertional, non-exertional, strength, stamina, manipulative requirements, or environmental components." Dkt. 12 at 24–25. The Commissioner responds that the ALJ reasonably relied on the vocational expert's testimony, so substantial evidence supports the ALJ's step four finding. Dkt. 13 at 10.

Here, the ALJ found that Plaintiff's past relevant work as a telemarketer was performed at the "sedentary exertion level," and that Plaintiff was capable of performing that past relevant work. Dkt. 9-2 at 27. In making that finding, the ALJ relied on the "credible, persuasive, and uncontradicted" testimony of the vocational expert, who compared the ALJ's RFC finding with the

13

performance of work-related activities. *Id.*; *Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019) ("To assess a claimant's ability to continue working, the ALJ often relies on the testimony of vocational experts."). The vocational expert explained that she had heard Plaintiff's "testimony regarding her work history" and, after asking follow-up questions, had "sufficient information to classify her past work." Dkt. 9-2 at 58–59.

Because the ALJ was permitted to rely on the vocational expert's unchallenged testimony, *see Krell*, 931 F.3d at 584, the ALJ "met the requirement of articulating at some minimal level his analysis of the evidence." *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). Moreover, Plaintiff's attorney heard the vocational expert's analysis, did not object to her qualifications, and did not question her opinions based on the nature of Plaintiff's past relevant work. Dkt. 9-2 at 58–68. "When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). That's especially true for the ALJ's analysis at step four, because Plaintiff "bears the burden of establishing that she is unable to return to her past relevant work." *Arbogast v. Brown*, 860 F.2d 1400, 1403 (7th Cir. 1988).

Plaintiff's reliance on *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984), does not change this conclusion. *See* dkt. 12 at 25. In *Strittmatter*, the ALJ concluded only that the plaintiff could "return to her former job as a machine operator or other assembly jobs" because the plaintiff's prior work was sedentary. 729 F.2d at 509. The Seventh Circuit reversed based on that

14

"excessively brief discussion" because "sedentary work is not homogeneous with respect to strenuousness."  *Id.*  Here, by contrast, the ALJ explicitly accepted the vocational expert's unchallenged testimony, which she was permitted to rely on.  Dkt. 9-2 at 27.  That is enough to support the ALJ's conclusion, and there is therefore no error requiring remand in the ALJ's step four analysis.  *See Donahue*, 279 F.3d at 446.

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/31/2022

                                              *James Patrick Hanlon*
                                              James Patrick Hanlon
                                              United States District Judge
Distribution:                            Southern District of Indiana

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com